1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

MICHAEL WILLIAMS,

                Plaintiff,

    v.

PHILLIPS, et al.,

                Defendants.

_____/

CASE NO. 1:11-cv-00456-GBC PC

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS and DISREGARDING
ALL OTHER MOTIONS AS MOOT

(Docs. 3, 12, 20, 23)

ORDER FOR THIS DISMISSAL TO COUNT
AS A STRIKE PURSUANT TO 28 U.S.C.
§1915(g)

### Order on Defendants' Motion to Dismiss

**I.      Procedural History**

      Plaintiff, Michael B. Williams, a civil detainee proceeding pro se and in forma pauperis,

filed this civil rights action pursuant to 42 U.S.C. § 1983 on March 7, 2011.  (Doc. 1.)  This action

is proceeding on Plaintiff's First Amended Complaint, filed May 17, 2011, against Defendant

Debbie Phillips, the Coalinga State Hospital Patient's Trust Officer, and Defendant Pamela Ahlin,

the Executive Director of Coalinga State Hospital, ("Defendants") for violation of the Fourteenth

Amendment's Due Process Clause, Equal Protection Clause, and Takings Clause via the policy

implementing California Welfare & Institutions Code § 7281 ("§ 7281") through which monies

from his trust account were withdrawn without his prior consent, including interest thereon, and

on a state claim for violation of the no-contest clause of Plaintiff's father's will since Plaintiff

1 received the monies in question via disbursement of his father's estate.[1]  (Doc. 17.)  Plaintiff is

2 committed at Coalinga State Hospital ("CSH") as a Sexually Violent Predator ("SVP") pursuant

3 to California Welfare & Institutions Code § 6600, et seq..  (Doc. 14, 1st AC, pp. 1-2.)

4         On August 23, 2011, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,

5 Defendants filed a motion to dismiss on the grounds both that Plaintiff fails to state a claim upon

6 which relief may be granted and that Defendants are entitled to immunity.  (Doc. 23.)  Plaintiff

7 filed an opposition on September 6, 2011 and Defendants filed a reply on September 19, 2011.[2]

8 (Docs. 25, 26.)  This motion is deemed submitted.  L.R. 230 (l).  For the reasons discussed herein,

9 Defendants motion is granted.

10 **II.    Legal Standard for Motions to Dismiss**

11         A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a

12 claim and dismissal is proper if there is a lack of a cognizable legal theory or the absence of

13 sufficient facts alleged under a cognizable legal theory.  Conservation Force v. Salazar, 646 F.3d

14 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted).

15         To survive a motion to dismiss, a complaint must contain sufficient factual matter,

16 accepted as true, to state a claim that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, __,

17 129 S.Ct. 1937, 1949 (2009) (*citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct.

18 1955 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S.

19 Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The Court must accept the well-pleaded

20 factual allegations as true and draw all reasonable inferences in favor of the non-moving party.

21 Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Huynh, 465 F.3d at 996-97; Morales v.

22 City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000).  However, while prisoners proceeding

23

24         [1] The screening order only addressed Plaintiff's claims under the Due Process Clause and state law.
   However, since this motion challenges the sufficiency of Plaintiff's allegations to state any cognizable claims and all
25 parties addressed the application of Plaintiff's factual allegations to possible claims under the Equal Protection
   Clause and the Takings Clause which Plaintiff raised in the First Amended Complaint, all such claims will be
26 addressed herein.

27         [2] Plaintiff filed a "Response to Defendant's [sic] Reply to Plaintiff's Opposition to Motion to Dismiss FAC
   Pursuant to Fed.R.Civ.Proc. 12(b)(6)."  (Doc. 28.)  However, Plaintiff does not have a right to file a surreply under
28 the Local Rules or the Federal Rules of Civil Procedure, and Plaintiff did not obtain leave of court to do so.
   Therefore, Plaintiff's surreply is not considered and ordered stricken from the record.

pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), courts are not required to indulge unwarranted inferences, <u>Doe I v. Wal-Mart Stores, Inc.</u>, 572 F.3d 677, 681 (9th Cir. 2009) (quotation marks and citation omitted), and need not accept legal conclusions "cast in the form of factual allegations," <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. <u>Daniels-Hall v. National Educ. Ass'n</u>, 629 F.3d 992, 998 (9th Cir. 2010); <u>Sanders v. Brown</u>, 504 F.3d 903, 910 (9th Cir. 2007); <u>Schneider v. California Dept. of Corr.</u>, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  However, the court may properly consider matters subject to judicial notice and documents incorporated by reference in the pleading without converting the motion to dismiss to one for summary judgment. <u>U.S. v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003), *see also*, <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987) (court may consider facts established by exhibits attached to the complaint), <u>Mullis v. United States Bankruptcy Ct.</u>, 828 F.2d 1385, 1388 (9th Cir. 1987) (facts which may be judicially noticed), <u>Mack v. South Bay Beer Distributors</u>, 798 F.2d 1279, 1282 (9th Cir. 1986) (matters of public record, including pleadings, orders, and other papers filed with the court).  Under the doctrine of incorporation by reference, a court may also consider a document provided by a defendant which was not attached to the pleading if the plaintiff refers to the document extensively or if it forms the basis of the plaintiff's claim.  <u>Ritchie</u>, 342 F.3d at 908; *see also* <u>Daniels-Hall</u>, 629 F.3d at 998.

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See* <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448 (9th Cir. 1987).

**III.    <u>Plaintiff's Allegations – Overview</u>**

Plaintiff is an SVP and is housed at CSH.  On September 26, 2008, funds in the amount of $10,525.30 were deposited into Plaintiff's trust account at CSH.  (Doc. 14, 1st AC, ¶¶ 22, 23.)  Defendants placed these funds "on hold for Cost of Care purposes."  (Id.)  On January 25, 2011, Defendants deducted $10,598.30 from Plaintiff's trust account as a payment for the cost of

1   Plaintiff's hospital care.  (Id., at ¶¶ 1, 13, 22, 35-37.)

2       Plaintiff alleges that Defendants violated his rights by deducting the monies he inherited in

3   the absence of his "knowing, affirmative and unequivocal consent. . . ."  (Id., at ¶ 33.)  Plaintiff

4   alleges that the taking of $10,598.30 from his trust account at CSH violated the Takings Clause

5   (id., at ¶¶ 16-27); the Due Process Clause (id., at ¶¶ 28-34); and the Equal Protection Clause (id.,

6   at ¶¶ 35-37); that such action also violated the "no-contest" clause in his father's will under

7   California law (id., at ¶¶ 38-40); and that Defendants' failure to pay Plaintiff interest on monies in

8   his trust account violated the Takings Clause (id., at ¶¶ 41-44).

9   **IV.    Plaintiff's Status**

10      Plaintiff is being held under the Sexually Violent Predator ("SVP") Act ("SVPA") at CSH.

11  To be determined to be an SVP, the detainee must have been convicted of a sexually violent

12  offense and have a diagnosed mental disorder that makes it "likely that he ... will engage in

13  sexually violent criminal behavior."  Cal. Welf. & Instit. Code § 6606(a)(1).  SVPs may be held

14  for an indeterminate term but the continued need for detention must be reviewed annually.  Cal.

15  Welf. & Inst.Code § § 6604, 6605.

16      "Sexually violent predators are involuntarily committed because their mental disease

17  makes them dangerous to others.  Neither the commitment nor the evaluation proceeding is

18  something they themselves seek in order to obtain a cure.  The state evaluates and commits to

19  protect others from them."  Seaton v. Mayberg, 610 F.3d 530, 540 (9th Cir.2010) (footnote

20  omitted).  Likewise, in Garcetti v. Superior Court, 85 Cal.App.4th 1113, 1117 (Cal.App.2d,

21  2000), California's SVPA was held to be "aimed at protecting society from, and providing

22  treatment for, that 'small but extremely dangerous group of sexually violent predators' who have

23  diagnosable mental disorders identified while they are incarcerated for designated violent sex

24  crimes, and who are determined to be unsafe and, if released, to represent a danger to others

25  through acts of sexual violence."

26      Plaintiff's status under the SVPA makes him a civil detainee.  "Persons who have been

27  involuntarily committed are entitled to more considerate treatment and conditions of confinement

28  than criminals whose conditions of confinement are designed to punish."  Youngberg v. Romeo,

1  457 U.S. 307, 322 (1982).  Civil detainees are "entitled to conditions of confinement that are not

2  punitive." Jones v. Blanas, 393 F.3d 918, 933 (9th Cir.2004); *see also* Youngberg 457 U.S. at

3  321-22 ("[P]ersons who have been involuntarily committed are entitled to more considerate

4  treatment and conditions of confinement than criminals whose conditions of confinement are

5  designed to punish"); Bell v. Wolfish, 441 U.S. 520, 535 (1979) (pretrial detainees retain greater

6  liberty protections than individuals detained under criminal process).

7       Further, "when a SVPA detainee is confined in conditions identical to, similar to, or more

8  restrictive than, those in which his criminal counterparts are held, we presume that the detainee is

9  being subjected to 'punishment.'" Jones, 393 F.3d at 933, *citing* Sharp v. Weston, 233 F.3d 1166,

10  1172-73 (9th Cir. 2000) (finding that Youngberg required that individuals civilly confined at a

11  commitment center receive "more considerate" treatment than inmates at the correctional center in

12  which the commitment center was located).  Due to the lack of legal authority as to the rights of

13  SVPs on varying legal issues, cases involving incarcerated persons have been viewed to provide

14  constitutional minimums to which SVPs are entitled.  *E.g.*, McNeal v. Mayberg, 2008 U.S. Dist.

15  LEXIS 101926 at *3, 2008 WL 5114650 (E.D.Cal. Dec. 3, 2008).

16  **V.     Plaintiff's Claims**

17       **A.     Due Process**

18       The Due Process Clause protects prisoners from being deprived of property without due

19  process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected

20  interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974).  An

21  authorized, intentional deprivation of property is actionable under the Due Process Clause.  *See*

22  Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (*citing* Logan v. Zimmerman Brush Co., 455

23  U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985).  An authorized

24  deprivation is one carried out pursuant to established state procedures, regulations, or statutes.

25  Logan, 455 U.S. at 436; Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also*

26  Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).  Defendants deducted the

27  money from Plaintiff's trust account per § 7281.  Thus, this case is appropriately analyzed under

28  the rubric for authorized deprivations.

An inmate has a protected property interest in the funds in his prison trust account, <u>Quick</u>, 754 F.2d 1521, 1523 (9th Cir. 1985), and in funds received from an outside source, <u>Wright v. Riveland</u>, 219 F.3d 905, 913 (9th Cir. 2000).  Doubtless, a SVP's interest in the funds in their state hospital trust account are protected as well.  *See* <u>Youngberg</u>, 457 U.S. at 322.  Once a protected property interest is found, the amount of process due is a question of law.  <u>Quick</u>, 754 F.2d at 1523.  "[D]ue process is flexible and calls for such procedural protection as the particular situation demands," <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972).  Where, as here, officials' actions follow an administrative process, predeprivation processes should be provided.  <u>Quick</u>, 754 F.2d at 1524, *citing* <u>Logan</u>, 455 U.S. 422, 435-36 (1982).  However, process due inmates for removal of funds from inmate account for medical services is minimal.  <u>Gardner v. Wilson</u>, 959 F.Supp. 1224, 1229 (C.D. Cal. 1997) (finding that due process requires no more than notice and the post-deprivation grievance process) *citing* <u>Myers v. Klevenhagen</u>, 97 F.3d 91. 95-96 (5ht Cir. 1996) (notice and adequate post-deprivation remedy); <u>Reynolds</u>, 936 F.Supp. at 1227 (same); <u>Scott v. Angelone</u>, 771 F.Supp. 1064, 1067 (D.Nev.1991) (no due process violation where money for medical charges deducted from inmate's account).

### 1.   <u>Plaintiff's Allegations</u>

Plaintiff alleges, on September 26, 2008, $10,525.30 was deposited into his account and that, on January 25, 2011, his rights under the Due Process Clause were violated when Defendants removed $10,598.30 from his account without his consent.  (Doc. 14, 1st AC, ¶¶ 28-34.)

### a.   <u>Parties' Positions</u>

Defendants argue that Plaintiff has a reduced property interest in his trust fund (Doc. 23-1, MTD P&A, pp. 4-7) and that Defendants were not required to obtain Plaintiff's consent prior to deducting the funds for the cost of his care, but that he was provided with proper notice and opportunity to be heard such that his rights to due process were not violated (<u>id.</u>, at pp. 7-9).

Plaintiff responds that: pretrial detainees are entitled to the same due process protection as ordinary citizens (Doc. 25, Opp., p. 2); Defendants were not required to deduct the money in question from Plaintiff's account, but could only have done so if he consented to such deductions (<u>id.</u>, at pp. 4, 7, 8, 10); and that CSH is responsible for the cost of his care since "there has been

1   no formal state court adjudication of [Plaintiff's] guilt of being a sex offender brought against

2   [sic] at the time that Plaintiff allegedly required care and treatment for which Defendants has [sic]

3   sought . . . recovery for his cost of care . . ." (id., at pp. 4-5).

4          In reply, Defendants reiterate that Plaintiff was provided with notice and opportunity to be

5   heard both prior and subsequent to the withdrawal of funds from his trust account.  (Doc. 26,

6   Reply, pp. 3-4.)

7                  **b.**      **Discussion**

8          The 1st AC and attached exhibits show that, on September 14, 2010, Plaintiff was

9   provided with the "Notice of Intended Withdrawal" which included a notice of an appeal process.

10  (Doc. 14, 1st AC, Ex. A.)  Plaintiff filed a "complaint" which was received and acknowledged by

11  the California Department of Mental Health.  (Id., at pp. 24-26.)  On January 25, 2011, subsequent

12  to Plaintiff's appeal, the monies in question were withdrawn from his account.  (Id., at Ex. C.)

13  Plaintiff subsequently filed a patient's rights complaint.  (Id.)

14         Contrary to Plaintiff's allegations, neither due process, nor § 7281 require Defendants to

15  obtain his consent prior to withdrawing the funds in question.  Rather, section 7281 provides that,

16  in their discretion, Defendants may withdraw any sums over $500 from Plaintiff's trust account.

17  And while "due process is flexible and calls for such procedural protections as the particular

18  situation demands," Morrissey, 408 U.S. 471, 481 (1972), this precise scenario has already been

19  addressed by the Ninth Circuit.  In Crawford v. Gould, 56 F.3d 1162, 1165 (9th Cir. 1995), the

20  Ninth Circuit ruled that due process required Defendants, prior to withdrawing any funds from

21  patients' accounts, to give adequate notice and to inform patients:

22         a) of the proposed share of cost and the facts on which the determination was made;

23         b) that the plaintiff has a right to appeal the share of cost determination;

24         c) a description of the appeal process and procedure; and

25         d) that certain federal benefits, specifically Social Security benefits and Veterans benefits,

26         are exempt from legal process and cannot be used to pay the plaintiff's cost of care without

27         the patient's knowing, affirmative and unequivocal consent.

28  The Notice Of Intended Withdrawal form which was given to Plaintiff at CSH on

                                        7

1  September 14, 2010, and is attached as part of Exhibit A to the 1st AC, indicates that the hospital

2  intended to withdraw $10,525.30 from Plaintiff's personal deposit fund for payment against

3  Plaintiff's liability for the cost of his care and treatment.  (Doc. 14, 1st AC, p. 20.)  The last

4  paragraph on the form indicates that Plaintiff may appeal the Department's determination and the

5  amounts to be withdrawn and that the reverse side of the form contains the appeal process and

6  includes applicable time limits.  (Id.)  The paragraph before the last also indicates that

7  withdrawals will not be made from federal benefits such as social security, veterans, or railroad

8  retirements unless a patient signs an authorization.  (Id.)  This form meets the due process

9  requirements as set forth in Crawford.

10        Thus, Plaintiff fails and is unable to state a claim for violation of his rights under the Due

11  Process Clause such that Defendants motion thereon is granted.

12             **2.**      **Equal Protection Clause**

13        The Equal Protection Clause requires that persons who are similarly situated be treated

14  alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An equal

15  protection claim may be established in two ways.   First, a plaintiff establishes an equal protection

16  claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's

17  membership in a protected class.  *See e.g.*, Comm. Concerning Cmty. Improvement v. City of

18  Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir.

19  2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).  Under this theory of equal

20  protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's

21  membership in a suspect class, such as race.   Thornton v. City of St. Helens, 425 F.3d 1158, 1167

22  (9th Cir. 2005).  SVP prisoners are not a suspect class.  Carmony v. Mayberg, 2010 U.S. Dist.

23  LEXIS 107754 at *53, 2010 WL 3958648 (E.D.Cal. Oct. 7, 2010) *citing* People v. Sumahit, 128

24  Cal.App.4th 347, 354 (Cal.App.3d Dist.2005).

25        Since this action does not involve a suspect classification, Plaintiff may establish an equal

26  protection claim by showing that similarly situated individuals were intentionally treated

27  differently without a rational relationship to a legitimate state purpose.   Engquist v. Oregon

28  Department of Agriculture, 553 U.S. 591, 601-02 (2008); Village of Willowbrook v. Olech, 528

1 | U.S. 562, 564 (2000) (coining the term "class of one"); <u>Gonzalez-Medina v. Holder</u>, 641 F.3d

2 | 333, 336 (9th Cir. 2011); <u>Lazy Y Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 592 (9th Cir. 2008); <u>North</u>

3 | <u>Pacifica LLC v. City of Pacifica</u>, 526 F.3d 478, 486 (9th Cir. 2008).  To state a claim as a class of

4 | one, a plaintiff must articulate who he is similarly situated to and how they are similar in order for

5 | disparate treatment to equate to a violation of his rights to equal protection.  *See* <u>McCollum v.</u>

6 | <u>California Dept. Of Corrections and Rehabilitation</u>, 647 F.3d 870, 880-81 (9th Cir. 2011), *citing*

7 | <u>Flores v. Morgan Hill Unified Sch. Dist.</u>, 324 F.3d 1130, 1134 (9th Cir. 2003).

8 |      "A class of one plaintiff must show that the discriminatory treatment 'was intentionally

9 | directed just at him, as opposed . . . to being an accident or a random act.'"  <u>Pacifica</u>, 526 F.3d

10 | 478, 486 (9th Cir. 2008), *quoting* <u>Jackson v. Burke</u>, 256 F.3d 93, 96 (2d Cir. 2001).

11 | **a.**     <u>**Plaintiff's Allegations**</u>

12 |      Plaintiff alleges that his rights under the Equal Protection Clause were violated when

13 | Defendants removed the $10,598.30 he inherited from his account for the cost of his care since

14 | they do not remove Social Security benefits from other patient's accounts to cover their cost of

15 | care.  (Doc. 14, 1st AC, ¶¶ 35-37.)

16 | **(1)**     <u>**Parties' Positions**</u>

17 |      Defendants argue that Plaintiff is not similarly situated to persons receiving Social

18 | Security since the monies at issue in this action were his private inheritance rather than a federal

19 | benefit (Doc. 23-1, MTD P&A, pp. 9-10), that recipients of federal benefits must qualify for them,

20 | and that such benefits are subject to restrictions imposed by federal statute (<u>id.</u>, at p. 10).

21 | Defendants further argue that, even if Plaintiff is deemed to be similarly situated to federal benefit

22 | recipients, Plaintiff's equal protection claim cannot survive because Defendants' actions were

23 | rationally related to a legitimate state purpose to reimburse a portion of the costs incurred for

24 | Plaintiff's care and treatment.  (<u>Id.</u>, at p. 10, *citing* <u>Tillman v. Lebanon County Correctional</u>

25 | <u>Facility</u>, 221 F.3d 410, 423 (3rd Cir. 2000).)

26 |      Plaintiff responds that: he and other CSH patients who receive inheritance benefits are

27 | similarly situated to those who receive Social Security or veteran's benefits or even those patients

28 | who receive loans to pay for their tuition for taking courses, but that such benefits are not taken by

9

1   Defendants to cover the cost of care and treatment "without their knowing, affirmative and

2   unequivocal consent" (Doc. 25, Opp., pp. 10-11, *citing* <u>Crawford</u>, 56 F.3d 1162

3   (1995)[3]).  Plaintiff also argues that Defendants violated his rights to equal protection to "the

4   extent that a state statute requires Plaintiff, as civil detainee to reimburse Defendants for the cost

5   of his care, support and maintenance while he is involuntary [sic] confined in their custody

6   pursuant to California Institutional Code Section 6602, pending an SVP-Probably Cause

7   Hearing."

8       In reply, Defendants reiterate that Plaintiff was provided with an opportunity to be heard

9   both prior and subsequent to the withdrawal of funds from his trust account.  (Doc. 26, Reply, pp.

10  3-4.)

11              **(2)**   **Discussion**

12      There is no similarity between Plaintiff as a recipient of inheritance from his father's

13  passing and a patient who is a recipient of Social Security benefits.  Social Security provides

14  benefits to individuals who qualify under federal law.  As discussed in <u>Crawford</u>, 56 F.3d at 1165,

15  the process California previously utilized to deduct Social Security benefits from patients'

16  hospital accounts was preempted by the nonassignment provision of the Social Security Act, 42

17  U.C.S. § 407(a).  The Supremacy Clause of the United States Constitution required that the state

18  procedure attaching such benefits cease.  <u>Crawford</u>, 56 f.3d at 1165, *citing* <u>Bennett v. Arkansas</u>,

19  485 U.S. 395, 397 (1988) (per curiam).  There are no Supremacy Clause issues that protect receipt

20  of inheritance from a parent's death.  Inheritance received by a child is not a federal benefit.

21      Thus, Plaintiff is simply not similarly situated to CSH patients who receive Social Security

22  or other federal benefits and he is unable to state a claim for violation of his rights to equal

23  protection of the law as a class of one.  *See* <u>Willowbrook</u> 528 U.S. at 564.  Defendants' motion to

24  _____

25          [3] It is noteworthy to delineate that the ruling in <u>Crawford</u> held that California could not deduct a patient's
    Social Security benefits to cover the cost of their care, but this ruling did not extend to Veteran's benefits, as implied
26  by Plaintiff, since in so ruling, the District Court therein had gone beyond the claim asserted in the pleading.  <u>Id.</u>,
    *citing* <u>Brawner v. Pearl Assurance Co.</u>, 267 F.2d 45, 47, n. 2 (9th Cir. 1958).  It is also noteworthy that a trend
27  appears to be developing towards eviscerating such nonassignment, or anti-attachment, provisions, which would lead
    to a state being able to withdraw federal benefits from patients' accounts as well.  *See* <u>Wash. State Dept. Of Soc. &</u>
28  <u>Health Servs. V. Keffler</u>, 537 U.S. 371 (2003).

1 dismiss Plaintiff's claim under the Equal Protection Clause is granted.

2               **3.**     **Takings Clause**

3       "The Takings Clause of the Fifth Amendment prohibits the government from taking

4 private property for public use without just compensation." Ward v. Ryan, 623 F.3d 807, 810 (9th

5 Cir. 2010).  "This right is applicable to the states through the Due Process Clause of the

6 Fourteenth Amendment."  Id. citing Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S.

7 155, 160 (1980).

8       "To establish a violation of the Takings Clause, [a plaintiff] must first demonstrate he has

9 a property interest that is constitutionally protected.  Only if [the plaintiff] does indeed possess

10 such an interest will a reviewing court proceed to determine whether the expropriation of that

11 interest constitutes a 'taking' within the meaning of the Fifth Amendment.  Property interests are

12 not constitutionally created; rather, protected property rights are created and their dimensions are

13 defined by existing rules or understandings that stem from an independent source such as state

14 law."  Id. (citations and quotations omitted).

15               **a.**     **Plaintiff's Allegations – Monies in Trust Account**

16       Plaintiff alleges, on September 26, 2008, $10,525.30 was deposited into his account and

17 that, on January 25, 2011, his rights under the Takings Clause were violated when Defendants

18 removed $10,598.30 from his account and placed these monies on "hold for Cost of Care

19 purposes."  (Doc. 14, 1st AC, ¶¶ 22, 23.)

20               **(1)**     **Parties' Positions**

21       Defendants argue that the California Legislature has bestowed on Plaintiff only a limited

22 interest in his trust fund and SCH did not take the money in his trust fund for a public use.  (Doc.

23 23-1, MTD P&A, pp. 4-7; Doc. 26, Reply, p. 2-3.)

24       Plaintiff responds by arguing that he is entitled to at least the rights that prisoners have,

25 and, citing Quick, 754 F.2d 1523 among others, argues that he has a protected property interest in

26 monies in his trust account under the Takings Clause since the funds in an inmate's prison trust

27 account is a protected property interest.  (Doc. 25, Opp., pp. 7-10.)

28

1        **(2)    Discussion**

2        Plaintiff's property interests in the funds in his trust account at CSH are created and

3    defined by California law.  " Ward, 623 F.3d at 810.  Section 7281 limits Plaintiff's interest, as a

4    civil detainee, in the monies in his trust fund in as much as it specifies that amounts over $500

5    may be used for the cost of his care at the hospital.  The monies in question were removed under,

6    § 7281, from Plaintiff's trust account to pay for his care at the CSH.

7        In his opposition, Plaintiff argues that, per Quick, inmates' trust funds are protected and

8    that he should have at least rights parallel, if not superior to those of an inmate.  However, Quick

9    addressed protected property rights of inmates who are under the jurisdiction of the Department of

10   Corrections for punitive purposes.  If Plaintiff were an inmate, the Department of Corrections

11   would bear financially responsibility for his care and treatment.  However, even though

12   committed under the Penal Code, as a SVP, Plaintiff is under the care of jurisdiction of the State

13   Department of Mental Health for care and treatment of his condition.  *See* Conservatorship of

14   Edde, 173 Cal.App.4th 883 (2009).  Since Plaintiff's commitment to CSH is civil in nature,

15   monies over $500 that Plaintiff comes into possession of (such as his inheritance from his father)

16   can be deducted from his trust account to go towards the cost of his care and treatment.  Such

17   requirement of payment towards the cost of care "does not arbitrarily shift societal costs to a small

18   segment of the public.  The very costs exist only because the state is providing a treatment setting

19   in the state hospital for the benefit of the patient." Edde, 173 Cal.App.4th at 894, *quoting* Dept. of

20   Devel. Serv. v. Ladd, 224 Cal.App.3d 128, 139 (1990)..

21       Whether or not voluntary, Plaintiff is not a prisoner; rather he is a patient of the

22   Department of Mental Health.  It has been noted that "no California court ha[s] ever held that a

23   patient should not be charged for his or her own hospital care and treatment." Id., *citing* Ladd,

24   224 Cal.App.3d at 137.

25       Though not specifically argued, Plaintiff may also have intended to imply that, parallel to a

26   criminal prisoner, the cost of his care and treatment is generally shouldered by the State (i.e.

27   taxpayers) and his confinement at CSH is for him to receive care and treatment out of concern for

28

the safety of the public such that taking his inheritance to pay for it equates to a taking of his private property for public use, or for the public good.  However, Plaintiff's detainment at CSH as a SVP is purely civil in nature.  The SVPA targets a select group of convicted sex offenders whose mental disorders predispose them to commit sexually violent acts if released following punishment for their crimes.  Hubbart v. Superior Court, 19 Cal.4th 1138, 1143–1144 (1999).  The SVPA confines and treats such persons until their dangerous disorders recede and they no longer pose a societal threat. SVP trials are " 'special proceedings of a civil nature,' " wholly unrelated to any criminal case.  People v. Yartz, 37 Cal.4th 529, 535 (2005).  They are not punitive in purpose or effect.  Hubbart, 19 Cal.4th at pp. 1144 & fn. 5.  Further, "the secure nature of confinement under the SVPA does not negate its therapeutic features."  Schneider v. Superior Court, 50 Cal.4th 802 (2010).  Even though the public's safety is a concern, Plaintiff's treatment predominates.

Thus, the use of monies in excess of $500 in Plaintiff's trust fund to pay towards his care and treatment does not equate to a violation of the Takings Clause for taking private property for public use.  Accordingly, since the Takings Clause is not violated by Defendants' deduction of monies in excess of $500 from Plaintiff's trust account at CSH, it is also not violated by any failure to pay interest thereon.

### b.     Plaintiff's Allegations – Interest

Plaintiff alleges that Defendants violated the Takings Clause by not paying him interest on monies in his trust account.  (Doc. 14, 1st AC, ¶¶ 41-44.)

### (1)     Parties' Positions

Defendants argue that Plaintiff is not owed interest on the monies in his trust account as Plaintiff's account was not interest-bearing.  (Doc. 23-1, MTD P&A, pp. 11-12; Doc. 26, Reply, p. 6.)

Plaintiff responds that Defendants violated his rights by failing to pay interest on any funds deposited in his trust account.  (Doc. 25, Opp., pp. 4, 15, *citing* Schenider, 151 F.3d 1194.)

### (2)     Discussion

"The funds of a patient in a state hospital . . . shall not be deposited in interest-bearing

accounts or invested . . . except when authorized by the patient." Cal. Welf. & Inst. Code §

4125(b)(1).  Plaintiff does not allege that his trust account at CSH was interest bearing; that he

authorized any of his monies to be placed in an interest bearing account; nor does he allege that

interest was actually accruing on his trust account.  (Doc. 14, 1st AC.)  Plaintiff's reliance on

Schneider is misplaced since it addressed inmates' accounts that were interest bearing where the

interest was allocated not to the prisoners, but rather to an inmate welfare fund -- which is

distinguishable from the scenario here.  Accordingly, Plaintiff does not have a protected property

interest on the interest earned on funds in his trust account at CSH since it was not interest

bearing, no interest was accruing, and he does not allege as much in the 1st AC to state a claim for

actually being deprived of any such interest.

Accordingly, Plaintiff cannot state a cognizable claim under the Takings Clause.

Defendants' motion to dismiss Plaintiff's claims under the Takings Clause is granted

### 4.    "No-Contest" Clause Violation

#### a.    Plaintiff's Allegations

Plaintiff alleges that Defendants violated the "no-contest" clause of his father's will when

they deducted the monies from Plaintiff's trust account since the monies were received via

disbursement of his father's estate.  (Doc. 14, 1st AC, ¶¶ 38-40.)

#### (1)    Parties' Positions

Defendants argue that they were not beneficiaries such that the "no contest" clause of

Plaintiff's father's will did not apply to them.  (Doc. 23-1, MTD P&A, p. 11; Doc. 26, Reply, pp.

5-6.)

Plaintiff responds that the provisions of the "no-contest" clause in his father's will "are

preempted from attachment by California Welfare and Institutions Code Section 7281;"

Defendants' deduction of his inheritance benefits constituted "other legal process;" and

Defendants should have held a hearing to determine his competency.  (Doc. 25, Opp., pp. 3, 12-

14.)

/ / /

### (2)   **Discussion**

A no contest clause "essentially acts as a disinheritance device, i.e., if a beneficiary contests or seeks to impair or invalidate the trust instrument or its provisions, the beneficiary will be disinherited and thus may not take the gift or devise provided under the instrument." Donkin v. Donkin, ___ Cal.Rptr.3d ___, 2012 WL 975714 (March 23, 2012), *quoting* Burch v. George, 7 Cal.4th 246, 265 (1994). A "contest" is "a pleading filed with the court by a beneficiary that would result in a penalty under a no contest clause, if the no contest clause is enforced." Cal. Prob. Code § 21310(a).

Defendants are not beneficiaries under Plaintiff's father's will and had no stake in its distribution. (Doc. 14, 1st AC, Ex. D.) Further, Plaintiff allegations show that Defendants' actions in regards to his inheritance took place after the monies had been received in Plaintiff's trust account and were not instituted via any pleading filed with a court. (Id.) Defendants' actions regarding the monies Plaintiff inherited which were received in his trust account at CSH do not, and cannot amount to a violation of any alleged no contest clause in Plaintiff's father's will.

Finally, Plaintiff's reliance on Sell v. Parratt, 548 F.2d 753 (9th Cir. 1977)[4] is misplaced as that case held that prison officials violated due process by prescribing and enforcing forfeitures of monies in inmates' possession as a punitive measure for violation of administrative rules and regulations where there was an absence of state statutory authority. In this case, the monies in question were not taken as a punitive measure, but were rather taken as authorized by § 7281 for the cost of Plaintiff's care and treatment.

Defendants' actions regarding the monies Plaintiff inherited which were received in his trust account at CSH do not, and cannot amount to a violation of any alleged no contest clause in Plaintiff's father's will. Defendant's motion to dismiss Plaintiff's claim against them for violation of the alleged no contest clause in his father's will is granted.

All other arguments, including immunities need not be reached since Defendants are

---

[4] Plaintiff cited a number of other cases which were reviewed. However, this is the only case he cited which appeared close enough to the issues in this case to warrant discussion.

1  entitled to dismissal of this action on the merits of Plaintiff's claims against them.  Further, leave
2  to amend need not be granted as to do so would only invite fabrication.

3  **VI.    Order**

4         For the reasons set forth above, Defendants' motion to dismiss is granted and
5  Plaintiff's First Amended Complaint (Doc. 14) is dismissed without leave to amended.

6      1.    Defendants' Motion to Dismiss, filed on August 23, 2011 (Doc. 23), is
7            GRANTED;

8      2.    this action is DISMISSED with prejudice for failure to state a claim upon which
9            relief may be granted;

10     3.     Plaintiff's surreply entitled  "Response to Defendant's [sic] Reply to Plaintiff's
11           Opposition to Motion to Dismiss FAC Pursuant to Fed.R.Civ.Proc.12(b)(6)" (Doc.
12           28) filed September 28, 2011, is STRICKEN from the record;

13     4.    all pending motions in this case (Doc. 3, filed March 7, 2011; Doc. 12, filed April
14           27, 2011; Doc. 20, filed June 17, 2011) are DISREGARDED as moot;

15     5.    This dismissal shall count as a strike pursuant to 28 U.S.C. § 1915; and

16     6.    The Clerk of the Court is directed to enter judgment in Defendants' favor and
17           against Plaintiff and to close this action.

18

19  IT IS SO ORDERED.

20  Dated:    March 29, 2012

21                                              UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28